## MAGEE v. UNITED STATES.

Court of Claims. January 20, 1930.

No. J–675.

764

Theodore B. Benson, of Washington, D. C., for plaintiff.

Lisle A. Smith, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen., for the United States.

Argued before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, GRAHAM, and GREEN, Judges.

GREEN, Judge. This is a suit begun to recover $47,871.03, upon a claim for refund of taxes filed by the plaintiff on December 12, 1927, and rejected by the Commissioner of Internal Revenue.

The facts in the case are not in dispute. Plaintiff filed his individual income tax return for the calendar year 1916 with the collector of internal revenue, and paid the amount shown to be due by the return in 1917. Thereafter, the Commissioner of Internal Revenue audited the return, and determined that an additional tax was due in the sum of $6,911.30, and on November 15, 1920, the plaintiff and the Commissioner signed a so-called waiver, by which plaintiff waived the three-year limitation in regard to the assessment of additional taxes for the year 1916, for $6,911.30. The additional assessment of $6,911.30, however, is only mentioned in the sequence of events, as it has no bearing on the questions involved in the case, and the claim made by plaintiff that, by signing the waiver, the Commissioner agreed that no change should be made in the assessment, has no foundation in law or fact.

Thereafter the Commissioner made a further examination of plaintiff's income tax return, and during the month of October, 1921, made an additional assessment of $64,982.12, for which notice and demand for payment was sent to plaintiff, who, thereupon, on November 15, 1921, filed a claim in abatement for the full amount of such additional assessment.

The parties agree that upon receipt of the claim in abatement it was common practice to hold up the collection of an additional assessment. Following this practice, the collector refrained from the collection of an additional assessment, and forwarded the claim in abatement to the Commissioner. The collector made no further endeavor to collect the amount covered by the claim in abatement until after the claim had been finally adjusted by the Commissioner of Internal Revenue.

The claim in abatement was formally allowed by the Commissioner on February 12, 1924, in the amount of $21,952.28, and was rejected in the amount of $43,029.84, for which sum notice and demand was sent by the collector to the plaintiff May 13, 1924. Plaintiff discharged the demand by the payment thereof with interest in three installments, two in 1924 and one in 1925; the total amount of tax and interest so paid being $47,871.03.

As before stated, the plaintiff filed a claim for refund, which was disallowed. The amount of this claim was $47,205.12, repre-

senting the additional tax of $43,029.84, together with interest thereon.

Two propositions are presented by plaintiff which constitute the issues in the case: First, that the assessment of the tax was illegal, being made after the expiration of the statute of limitations applicable thereto, which, as plaintiff claims, was a three-year period prescribed in section 9(a) of the Revenue Act of 1916 (39 Stat. 763); second, that sections 607 and 611 of the Revenue Act of 1928 (26 USCA §§ 2607, 2611) have no application to the facts in the case at bar, or, if held to be applicable so as to deprive plaintiff of the right to maintain its action to recover the taxes in controversy, section 611 is unconstitutional and void.

The contention that the assessment of the tax was illegal is based on the theory that the statute of limitations applicable to the assessment of the tax was section 9(a) of the Revenue Act of 1916. We think it manifest that the period of limitations was that prescribed by the 1921 act. This act did not go into effect until November 23, 1921, but by its terms it was expressly made retroactive to January 1, 1921, and the assessment in controversy was made in October, 1921. The 1921 act repealed the provisions of the 1916 act, which refer to the matters in controversy in this case, and provided that the amount of any "taxes due under any return made under this Act for prior taxable years or under prior income, excess-profits, or war-profits tax Acts * * * shall be determined and assessed within five years after the return was filed." Section 250(d); 42 Stat. 265. In this case the taxes were due "under prior income * * * tax acts." The 1921 act having been made retroactive with reference to assessments, its effect in this case was the same as if it had been enacted on January 1, 1921, and had been in force when the assessment was made. It therefore appears to us clear that the five-year limitation of the 1921 act applied, and that the assessment, having been made within five years from the time when the original return was made by plaintiff, was not barred by limitation. Defendant claims that, as applied to the facts in this case, there was no limitation provided by the 1916 act for the assessment of taxes. As we hold that the 1916 act does not apply, it becomes unnecessary for us to pass upon the point thus raised.

Discussing the second proposition presented by plaintiff, it will be observed that the tax involved herein was not collected until more than five years after the filing of the return, and the defendant concedes that under the decision in Bowers v. New York & Albany Lighterage Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676, plaintiff can recover the amount so collected, unless prevented by the provisions of sections 607 and 611 of the act of 1928. These two sections are set out in full and discussed at length in the case of Oak Worsted Mills v. United States (No. J-180) 36 F.(2d) 529, decided by this court December 2, 1929, but, as there is a claim that the facts in this case are somewhat different from those in the Oak Worsted Mills Case, supra, we again quote from the 1928 act these two sections, as follows:

"Sec. 607. *Effect of Expiration of Period of Limitation Against United States.*— Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after the enactment of this act) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim." 26 USCA § 2607.

"Sec. 611. *Collections Stayed by Claim in Abatement.*—If any internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) was, within the period of limitation properly applicable thereto, assessed prior to June 2, 1924, and if a claim in abatement was filed, with or without bond, and if the collection of any part thereof was stayed, then the payment of such part (made before or within one year after the enactment of this act) shall not be considered as an overpayment under the provisions of section 607, relating to payments made after the expiration of the period of limitation on assessment and collection." 26 USCA § 2611.

Coming now to a consideration of the contention of the plaintiff that sections 607 and 611 of the act of 1928 have no application to the case at bar, we find that it is based on two propositions:

First, that the tax in question was not assessed within the period of limitations and hence is not covered by section 611.

Second, that section 611 applies only to cases where a claim in abatement was filed and the collection of the tax was thereby stayed.

Our views on the first of these two propositions have already been expressed, and we have found that the tax, being assessed under the 1921 act, was assessed "within the period of limitation properly applicable thereto," as required by section 611.

The second proposition has in most respects been discussed at length in the Oak

Worsted Mills Case, wherein we held that Congress in section 611 did not refer to a legal stay existing by virtue of the plea of abatement, for such a thing did not exist. At no time did the law contain any provision for a plea of abatement bringing about a stay, and at no time did it in fact legally stay the collection of the tax. Plaintiff's claim therefore is in substance that section 611 applies only to cases which never have arisen and never could arise. It has been said in some decisions that have been called to our attention that taxing statutes should be construed liberally in favor of the taxpayer, but this rule surely has some limits, and ought not to be applied where the intent of Congress is so clearly manifest as it is in this matter. The report of the Ways and Means Committee upon the act of 1928, which, so far as it pertains to sections 607 and 611 (26 USCA §§ 2607, 2611), is set out in full in the Oak Worsted Mills Case, shows very plainly what Congress intended. It states that:

"Prior to the enactment of the revenue act of 1924, it was the administrative practice to assess immediately additional taxes determined to be due. Upon the assessment, taxpayers were frequently *permitted* to file claims in abatement with the collector *and thus delay the collection* until the claim in abatement could be acted upon." (Italics ours.)

■ It thus appears that what Congress had in mind was the delay of the collector in collecting a tax brought about by the filing of the claim in abatement. The stipulation in the case at bar shows that it was the practice, where a claim in abatement was filed, to "hold up" the collection of the tax until the claim in abatement had been passed upon, and that the collector acted in accordance with the practice in the instant case. The rule contended for by plaintiff with reference to the construction of statutes liberally cannot, we think, be expanded so as to make the statute meaningless and useless, for this is not liberality of construction but extreme technicality. As we said in the Oak Worsted Mills Case, the general rules with reference to construction of statutes require that they should be construed so as to give effect to the intent of the legislative body which enacted them. The intent is, we think, quite manifest from the language of section 611 itself, especially when it is applied to the situation which we have described above, under which claims in abatement never acted as a legal stay. If anything more is needed, it is found in the report of the committee, which definitely sets out the intent of the proposed law.

■ In one respect this case is different from that of the Oak Worsted Mills Case. The assessment was made under the 1921 law, and plaintiff calls attention to a provision in that act providing that in certain cases "no claim in abatement of the amount so assessed shall be entertained." This provision is found in subdivision (d) of section 250 (42 Stat. 265). This subdivision provided that a taxpayer should be notified when a deficiency in a tax was discovered and given thirty days in which to file an appeal and show cause or reason why the tax or deficiency should not be paid; also that opportunity for hearing should be granted. When the notice of the deficiency was served in the instant case, the plaintiff filed the claim in abatement which might be considered his showing of a "cause or reason why the tax or deficiency should not be paid." Until after there was a decision on this showing, there was nothing forbidding a claim in abatement to be entertained. The law required final decision to be made "as quickly as practicable," but "any tax or deficiency in tax then determined to be due" was then required to be paid within ten days after notice and demand. Stated concisely, the statutory requirements were that, when a deficiency was found, the taxpayer should be notified and given an opportunity to show cause why it should not be paid. No particular form was required for this showing, and it should be kept in mind that it is only *after* the determination and assessment of the tax that the statute says "no claim in abatement of the amount so assessed shall be entertained." There was nothing in the law forbidding the filing of a plea in abatement *before* determination and assessment, and plaintiff filed his plea in abatement after notice of the deficiency, but prior to such determination. It was the common practice to so file pleas in abatement and have them considered before final determination of the tax was made. In fact, this was a perfectly logical and natural way for the taxpayer to present his claim that the taxes assessed against him ought to be reduced, and there was nothing in the statute forbidding the taxpayer following this method in presenting his case. In the instant case, the plea of abatement was considered by the Commissioner, and in part granted and in part refused, which action constituted the decision of the Commissioner. Under the particular circumstances of this case, neither the statute nor the facts support the contention of plaintiff that the filing of the plea of abatement was forbidden by law.

■ The plaintiff contends that, while this court has authority to determine a refund and

enter judgment for its payment, it has no authority to determine an overpayment. But what is it that is refunded? Certainly nothing but an overpayment, and the finding of an overpayment is necessary in order to establish the right to a refund. All the works on income taxes so treat this matter. When suit is brought in this court on a claim against the United States, if it is one within its jurisdiction, the court has power to adjudicate and determine all matters necessary to the establishment of the validity of the claim. The argument made by plaintiff on this point is without weight.

The plaintiff also contends that, while section 1106(a) of the act of 1926 (44 Stat. 113) was repealed as of the date of its enactment by the 1928 act (45 Stat. 875, § 612), a right had been vested in plaintiff to bring this suit which could not be taken away by the repeal of the statute or by sections 607 and 611 of the act of 1928 (26 USCA §§ 2607, 2611).

The questions arising on this point have been so fully discussed in the case of Gotham Can Co. v. United States (No. J–255) 37 F. (2d) 793, this day decided by this court, that we think nothing further need be added. We adhere to our conclusion in the case last named that section 1106 did not confer upon the plaintiff any right to maintain an action against the government for taxes collected prior to the passage of the 1926 act, unless the tax had been overpaid. As no such right was vested, none was taken away, and therefore no constitutional principle is violated. The facts in the case at bar are precisely similar so far as the application of section 1106 is concerned.

It follows from what has been said that plaintiff's action must be dismissed, and it is so ordered.

BOOTH, Chief Justice, and WILLIAMS, LITTLETON, and GRAHAM, Judges, concur.